Your argument next in case number 21-439, Nance v. Ward. Mr. Hellman. Thank you, Mr. Chief Justice, and may it please the Court. Mr. Nance's claim sounds in Section 1983 because it is a claim about how the state may execute him, not a claim that the state cannot execute him. That simple proposition decides this case, and indeed when the case began, respondents did not dispute it. Respondents knew contention that some method of execution cases sound in habeas is wrong. Wrong about the scope of the writ, wrong about the scope of Section 1983, and wrong under this Court's method of execution case law. Proposing a non-statutory method of execution is proposing a method of execution. By its very nature, the claim does not attack the validity of the death sentence, which places it squarely on the 1983 side of the line that this Court has demarcated. And that is particularly so because Mr. Nance is required to prove that the state has a feasible and readily available alternative means of carrying out the execution. It would stretch habeas beyond recognition to hold that it applies to a claim that not only concedes the validity of the sentence, but proves that the state has a feasible means of carrying it out. Respondents, of course, are free to dispute the feasibility of the firing squad as an alternative method, but that feasibility analysis is part of the Section 1983 merits inquiry, just as it is with the feasibility inquiry for any other proposed method. Any other result would mire method of execution litigation in threshold questions about whether a proposed alternative is truly non-statutory. The result would be confusion, delay, and arbitrariness. More than that, Respondents' rule would close the courthouse doors to the very claim that all nine members of the Buckley Court held should not be unduly difficult to bring. With that, I welcome the Court's questions. Could a state write into legislation for certain crimes that the execution would be, for example, only lethal injection? It is possible to imagine a state law that does that. That is not what Georgia law does, but I do think if the state – and this would be the first state that we are aware of – Well, let's just say a state, in response to this confusion, writes it into their statute, capital crime, that there is to be a specific form of execution. I do think that would present a different case, Your Honor. But if I may, what Georgia does is different and typical of state practice. When Georgia changes its method of execution, for example, when it went from electrocution to lethal injection, no one on death row was resentenced. And that is because Georgia law, like every other state law that we are aware of, treats the method as different from the death sentence itself. And the state has good reasons for doing that. That is not an accident. If changing the method of execution invalidated the sentence and required a new sentence, that could have collateral effects, such as reopening post-conviction review or retroactivity analysis. So that is fine if the state does it that way, but they can't have it both ways. Well, and from your standpoint, if you – the argument you're making now is, of course, the firing squad. If Georgia agrees with you and accedes to your request, would you be foreclosed from arguing another method of execution challenge or having another method of execution challenge with respect to the firing squad? Yes, Your Honor. You would be foreclosed. If I may explain. We are proposing the firing squad as our alternative method. We will prove that it is feasible and readily available. That's our burden. And in the process of doing that, if the case were to go forward on that basis, we would establish a method. If the state uses that method, yes, we may not challenge it, as you are saying. Counsel, to unpackage what you said, as far back as 1915, in the Molloy case, we said that a method of execution is not part of the sentence, correct? Correct, Your Honor. And so a change from one form of execution to another doesn't affect the sentence. That is correct. That's why we said you don't have to re-sentence someone. Correct. Foreclosed practice. There is some language in some of our cases that the other side relies upon that says when there is a duration, a challenge to the duration of the sentence, that that has to go into habeas. No judgment of execution that I'm aware of issued by a court says you have to be sentenced to death on such and such a date, correct? That is correct, and even I'm aware of situations in which a date is included, but that date can change without requiring re-sentencing. Exactly, and so as far as I'm concerned, are you aware of any legal impediment, constitutional or otherwise, that would prevent Georgia from amending its law to permit execution by firing squad? No, Your Honor, there is no impediment I'm aware of in the way that you phrase it. All right, and so just like a regulation can be changed by prison officials if not to cut down someone's vein, and we've had a case that says that's permissible under habeas, Georgia can do what it chooses to do in terms of finding a viable method of execution. That's what makes it a 1983 claim, Your Honor, because the claim isn't that he can't be executed, the claim is a how question, what manner. That is correct. Your argument is that this does not preclude execution because Georgia could enact a new statute, right? That is one argument, yes, Your Honor. What if the state constitution said that the only permissible method of execution is lethal injection? Would you make the same argument, well, the state constitution could be amended? It would still be a 1983 claim, Your Honor, because habeas is about claims that say the sentence is invalid. In that case, there would be a question as to how feasible this alternative would be, but that would be part of the 1983 analysis just as it is with our claim or some other proposed method. I mean, you're taking things very far when you say that amending a constitution is not an easy thing. Some constitutions, like the federal constitution, are extraordinarily difficult to amend, but you would say, well, it doesn't matter because in theory it could be done. Well, two parts. One, the question is what is the habeas writ, and this isn't about invalidating the sentence, but then to the feasibility point that you are talking about, the only way a claimant gets relief under the Eighth Amendment standard is to show that his proposed alternative is feasible and readily available. No, I understand that, but it's the issue of how that claim is to be raised, whether it's in habeas or whether it's in federal habeas or under 1983. Of course, it can be done under state law. Suppose state law provided that if there is a change in the prescribed method of execution, the defendant has to be resentenced. Would your answer be the same there? I think that gets to Justice Thomas's hypothetical, because it's functionally the same kind of question, where a state, for the first time to our knowledge, does make the method, in the important way, part of the sentence. I suppose that could be a different case, but again, states don't do that as a matter of practice because they don't want to have a resentencing when the method is changed. What if the state law was that if there's a change in the method of execution, there must be a new guilt phase trial? I'm trying to understand how far your argument would go. What would you say about the guilt phase argument? If the guilt, if the conviction, if I understand your question, is overturned or vacated, then that is, under the court's 1983 v. habeas line, that would be a habeas case. But that is not what, obviously, what we have here. And again, I appreciate the question of how far the principle goes, but the answer, I think, under this court's case is that if you are contending that you cannot be executed, there is no method, the death penalty is unconstitutional. The death penalty is unconstitutional as applied to me, the claimant. That is habeas. If it's a question of how the death penalty is to be administered, there's a question of the feasibility of the alternative, but that's just grist for the 1983 inquiry. Let me just ask one more. You gave, to start out, a number of questions, a number of answers to questions by Justice Sotomayor about what could be done, you can split it, etc., etc. Aren't those all questions of Georgia law? I mean, Georgia law could say you can't split it, you can split it, you can't change the method, you may change the method. Isn't that completely up to the state? And what do we know about, what answers are there to any of those questions? I mean, you said in one of the footnotes in your reply brief that under Georgia law, a change in the method of execution doesn't require anything other than the use of the new method, but there's no case that holds that, but you didn't cite one anyway. Let me see if I can attempt to respond to your question. Ultimately, what we have here is a question of federal law, because the scope of habeas, federal habeas, and the scope of Section 1983 are federal questions, and we know from the Molloy case, as Justice Sotomayor referred to, that simply going from one punishment to another, at least without more, doesn't present an ex post facto concern. The scope of what state law does, I suppose, could vary in some other state, but as to what Georgia law does, there's no question. And I point the court to the Dawson case, which we do talk about in our briefs, in which the argument was made, because the state was moving from electrocution to lethal injection, there was a contention, actually made by the state, I believe, in that case, that resentencing, that it was a challenge to the death penalty itself. And the court said, no, that is not the case as a matter of Georgia law. The method is separate from the death sentence. And that is in keeping, the ACLU brief actually has an extensive discussion of quite a few states, all of whom changed their method of execution without engaging in a resentencing. So I think the federal law aspect of this is clear, as well as how state law plays into that. How does Georgia's method of execution, how is that set? Georgia's method of execution is, first, a statutory matter, that is then, the Department of Corrections has policies and procedures that implement that method. And so they would have to change the statute itself? Well, to adopt, I believe to adopt the firing squad, that might well require a statutory amendment. But let me, I think this is a good time to raise a second part about the argument, because I think it gets lost in some of the back and forth between the parties. The firing squad is our proposed alternative. We are not aware of any method of lethal injection that would be constitutional as to Mr. Nance. But, although we are required to prove that there is a feasible alternative readily available to the state, that is not the alternative the state is obligated to obtain, or obligated to use in the case. The state can carry out Mr. Nance's execution by any legal method. And if the state were able to come up with a new method... Without regard to the current statute? As a matter of Eighth Amendment law, Georgia may carry out, may use any legal method. But not as a matter of Georgia law? I think as for Georgia law, they have a statutorily authorized method, which is lethal injection. What I was taught, so I believe to not use lethal injection would require amendment. However, what my point was that just because we proposed an alternative that would require that, it doesn't mean that Georgia is required to adopt that alternative. And, in fact, if they were able to come up with a method of lethal injection that was constitutional, they could use it. Which I think shows the distinctions my friends are trying to draw on the other side are illusory. They want to say because you proposed a non-statutory method, now we're onto the habeas track. But the case won't necessarily end up with a non-statutory method being adopted. If Georgia has a constitutional method of lethal injection, which we are not aware of, but as a legal matter, they are not foreclosed from using it by any relief that we would be able to obtain. And so to have these questions turn on speculation as to what method might ultimately be adopted, and to take our proposal and assume that is the one the state might use, is incorrect. You make forceful arguments about why 1983 is the appropriate mechanism here. But if this, suppose it's in a gray area, and we basically have a choice of which way to proceed here. And suppose relevant to that choice are the practical considerations of how this will play out under 1983 versus habeas in the future. The other side, I think, says the 1983 route is too susceptible to delay, gamesmanship, those kinds of things. I wanted to give you an opportunity to respond to that. I appreciate that, Justice Kavanaugh. With respect, I think it's just the other way around. And I'll take the defense part first and then talk about the problems with their method. Yeah, both. Courts with Section 1983 have all the tools they need to deal with dilatory claims, stop claims, claims that require a stay but aren't entitled to one because the prisoner comes too late or without a showing of likelihood of success. In fact, the district court here ruled against you on that ground, right? In fact, the district court ruled against us on that ground. Keep going. The one appellate judge to look at it thought that we had stated the claim. But, yes, the district court did rule against us on that ground. So 1983 offers courts all the tools they need to deal with this. But if you adopt their rule, then at the start of every case, there will be a question about whether the proposed alternative is truly non-statutory. And that gets complicated quickly for a variety of reasons, some that we raise in our brief and some of which become clear from my friend's position. As we talk about, for example, many lethal injection statutes prescribe specific drugs as well as similar drugs. Similar drugs. What is a similar drug? If a proposal is equally as effective, readily available, feasible, but not similar, then it's apparently a habeas claim. And you might not know that from the initial papers in the case. It might require fact-finding. It might require querying as to what a similar drug is. That's one example of something that might get decided and go back up and go back down with ramifications for whether the claim needs to be exhausted for habeas purposes. And then I'll only point out that my friend's test for non-statutory seems to be whether the warden could implement the alternative himself or herself. And there are, as we talked about in the briefing, many questions often where a proposed alternative drug is given as the alternative. But it might require licensing by a federal government or some other state actor, not the Department of Corrections, to approve the use of the drug. All of those questions would define the cause of action with jurisdictional consequences, exhaustion consequences. And to load all of that in to an inquiry that has been clear for quite some time with Justice Scalia's opinions about 1983 v. habeas, they tell you what the right answer is to that. Thank you, counsel. Justice Thomas? Justice Breyer? Justice Gleeson, any further? I do want to ask you a question or two about the second issue, about the second and successive issue. Could you just state in general terms what rule you would like us to adopt with respect to determine whether a petition is second or successive? I know you think this is like Panetti, but can you express it in more general terms? Yes. We would have the court follow the two-step inquiry that Bannister articulates based on the cases. Question one would be whether the claim is an abuse of the writ, which would look at whether it was abandoned, whether it was ripe at the time of first habeas. And then step two really does focus on the unique aspect, I shouldn't say unique, nearly unique aspect of this kind of claim. Like a Ford claim, which says that it is unconstitutional to execute those who are incompetent to understand the punishment that is being handed down by the state. This claim, too, assumes that the state, to meet the Eighth Amendment standard here, is employing a method of punishment that superabs pain for no penalogical reason where there is a feasible and readily available method at hand. All right, well the second part picks up on the statement in Panetti. I won't be able to give you a direct quote, but Panetti said this is basically a one-off, this is a unique situation. And now you say, well this is another unique situation. Okay, that's a possibility. But as to the first part, if we say second or successive means pre-AEDPA abuse of the writ, that's a big change, isn't it? You think that's what Congress meant when it enacted AEDPA? I have all that old law, I thought AEDPA was intended to get rid of a lot of that. I think step one is a door that a claimant, to be successful, has to pass through. And if that were the only door, that would be a sea change in how we understand the relationship of AEDPA to these kinds of claims. But there's a second step, and that step really is one that only a few claims will be able to take. Okay, and what is it about those claims? So if it's not just abuse of the writ, purposeful neglect, what is it about, what happens at this second door? Just as the court in Panetti took the view that Congress did not mean to deprive claimants of relief where their claims weren't right earlier, and the claim itself involved the unconstitutional execution, we'll assume concededly unconstitutional execution, this claim presents that in a way that, because of the demanding Eighth Amendment standard, really does, I submit, put it in stark relief and is equivalent to the kind of claim that Panetti thought was different from, not just the run-of-the-mill case, but the cases generally in this area. Mr. Sotomayor? Counsel, you're not emphasizing what I see as the key reason that this is similar to the other cases. It's the rightness issue. Bannister spoke about the test being whether it would have been considered an abuse of the writ for a new set of facts to lead to a constitutional violation, as in Ford, the issue is are you confident that the moment you're going to be executed, and many cases are dismissed by courts below because the mental condition has been around for years and there was delay, that could happen here too, as it appears to have happened in the district court's view, but putting that aside, it's the rightness question, isn't it? But rightness in terms of this is something that develops after, generally develops after. That is a necessary component of it and an important component of it, but I just want to be clear it is not the only component of the test that we're talking about today. But yes, that's quite correct. Mrs. King? Mr. Holman, I understand that you think that there needs to be a way to bring this claim somehow, but as between these two ways of bringing the claim, the 1983 way and the habeas way, which would be essentially saying don't worry about the second and successive bar, is there any difference from your point of view? Yes, both for Mr. Nance and in terms of coming up with an administrable system, there are important differences, and they dovetail in many ways. If it's done via habeas, the administrability problems become quite difficult because then you will have questions about whether or not this claim, once it's been determined to be a truly non-statutory alternative that meets the test that respondents are laying out, then you might have to go back to state court and there would be exhaustion questions. There would be to the extent that there's a determination. The AEDPA standards apply to that review. So, yes, 1983 is the right cause of action under this Court's cases because we're talking about what voids the judgment, and a claim that voids the judgment goes to habeas and this kind of claim does not. But it is true that habeas claims often carry procedural questions and different standards of review that make those claims that up the administrability difficulties that we've been talking about. Mr. Gorsuch? I'd like to pursue that just a little bit further with you. Certainly, if AEDPA were to control, you'd have to go to state court in the first instance, and review in federal court would be more limited. But I wonder how that cuts, and this kind of gets to Justice Kavanaugh's point too, which is we've said that if you're going to seek a shortening of your sentence, you've got to go to habeas. And here you're putting the state to a choice of either changing its law or being frustrated in its ability to carry out a lawful judgment. And why isn't that exactly the sort of thing, that federalism concern that animated AEDPA indicate to us? Why isn't that a signal that the right place to think about this case is that state courts should have the opportunity to address these questions in the first instance under AEDPA? I think the reason that isn't the right way to think about it is, as Justice Scalia artfully put it in the Wilkinson concurrence to Justice Breyer's decision for the court in that case, the question for habeas is it's a narrow writ. The question of what happens once you're in habeas, there are lots of hurdles there, no doubt about it. But you've got to get to habeas before all of that applies. So the question is, what is the scope of the writ? And I know the court doesn't necessarily agree 100% about what the scope of the writ is, looking at a case from earlier this week, but I think everyone agrees, and Justice Scalia certainly explained for the court, a claim about habeas, properties in habeas, has to attack the validity of the death judgment. This claim does not do that. Method of execution claims do not do that. You'd agree it puts the state to the choice of either changing its law or changing its sentence? No, I don't agree with that. You don't agree with that? I don't agree with that. How else could Georgia proceed in this case? Well, our proposal, the one that we think is feasible and readily available, is firing squad. To change its law, right? But that does not, I just want to be clear about what that assertion does in the case. It carries our burden, when we prove it, that there is an alternative. I understand that for Eighth Amendment purposes, but it does mean that as a practical matter the state cannot carry out the sentence, or it must change its law to do so, right? The reason I say no, if I may, is that if Georgia developed, employed, a method of lethal injection that was constitutionally adequate, they could use it. It would have to change its method of execution. That is true, but that would make every method of execution claim sound in habeas. Okay, let's put that aside, all right? Let's start with an example, one where you would concede hypothetically that Georgia would either have to change its law or change its sentence. Then what? If Georgia has to change its law to carry out the sentence, and the method of execution is not part of the sentence, as it is not in Georgia. So it doesn't make any difference? It goes to the feasibility, perhaps. It still goes to 1983. It doesn't go to habeas then. And I'm saying that not because it's my preference. I'm saying that because Section 1983 is the cause of action, going back for 150 years, that you use when you concede the validity of a sentence, but ask for an injunction against carrying it out in an unconstitutional way. I just wanted to test the boundaries of your argument. I appreciate that. Thank you. Thank you, Your Honor. Okay. Justice Barrett? So, as Justice Sotomayor was pointing out, one of the difficulties with this kind of claim is the ripeness concern, if we were to say that it must proceed in habeas. And on page 50 of the state's brief, the state says that there would be an avenue for pursuing that kind of claim in state court and state post-conviction proceedings, and I just wondered if you had a reaction to that. I do. With respect to my friends, method of execution cases cannot be brought in Georgia post-conviction proceedings. What the red brief talks about on page 50 is the notion that the second and successive bars under Georgia post-conviction rules are less stringent than they are under what's enacted in AEDPA. But it has to be the right kind of claim to be brought into habeas in the first place. And as I believe we point out in our brief, I can get you the page citation, Georgia, as a matter of Georgia post-conviction law, a claim challenging how Georgia carries out its execution is not cognizable in state post-conviction. So, the courthouse doors are closed. I know we use that metaphor a lot, but they are. Thank you. Thank you, Counsel. Thank you, Your Honor. Ms. Hansford? Mr. Chief Justice, and may it please the Court, there is no sound reason to carve off claims like petitioners from the general rule that method of execution challenges must proceed under Section 1983. And to Justice Kavanaugh and Justice Kagan's questions, a dual-track system would add procedural complexity, creating delay and inviting gamesmanship. For instance, a claim that alleges multiple alternatives could proceed in separate actions in different venues. Or a case may have to restart in a different court if a prisoner amends his complaint or if an appellate panel revives an alternative rejected by the court. And there's no compelling doctrinal reason for that approach. In fact, it would expand the scope of habeas to hold that a purely state law problem that does not invalidate a criminal judgment can somehow transform an action into a core habeas claim. I welcome the Court's questions. Suppose we were to agree with the state in this case, in what way would the interests of the federal government be adversely affected? Absolutely, Justice Alito. We do think that the determination in this case as to whether this is a core habeas claim would also apply to the federal government. The federal government, of course, federal prisoners do not use Section 1983, but they use the APA. And in the method of execution litigation that the federal government handled in 2020 and 2021, the prisoners did use the APA. Many claims were joined together at some point in that suit. The prisoners added a firing squad alternative. And we do think that if there were a dual-track system, there would have been all kinds of procedural complications to what was already a very complicated and difficult litigation that would have made it substantially more difficult. Can I follow up on that? As I know, there are 10 states like Georgia who specify one method in their law. And there are seven states who allow multiple methods. So your point is if we rule in respondents' favor, we're going to have this patchwork of similar identical issues on a particular method of execution, perhaps from around different states, some going into 1983 and some going into APA. That's right, Justice Sotomayor. The states vary widely, and there are some states like Florida and Alabama that actually just include a safety valve. They say our preferred method is lethal injection, also electrocution. But if both of those are unconstitutional, any constitutional manner is fine. The same claim would always be a Section 1983 in those suits. And so there would be very different treatment. And I guess one thing I would note on that is to the extent that the states may benefit in the short run from additional APA protections, if the trend is for more states to do what Alabama recently did and to add such a catch-all, that would be of a pretty short-term benefit. But I think the practical downsides in terms of creating this procedural complexity and the back-and-forth routing, which prisoners can use to delay executions, I think would last for a long time and is very concerning to the government. Thank you, counsel. Would you agree with Mr. Hillman that it wouldn't matter if the Georgia Constitution said that the only permissible method of execution is lethal injection? Justice Alito, I wouldn't say it doesn't matter. It doesn't matter to the procedural question. The procedural question should still be 1983. It may well be relevant to the merits inquiry. We take the court's decision in Buckley to say that invalidity under state law is not per se rendering something invalid. But I think if it would be particularly difficult to amend state law, it's not clear to us that a court should close its eyes to that while taking into account other reasons that an alternative would be difficult to implement, like licensing and other concerns. So we think there may be a role for that in the merits analysis. No, I don't really understand that. I really don't understand that answer. The question is whether the granting of a claim makes it impossible to execute the judgment. I mean, I think both sides have to figure out where to draw the line. But your argument is it goes all the way. Even if it would require an amendment to the state constitution, it doesn't matter. That's right, Justice Alito. We think that because the judgment would plainly remain valid under Georgia law, it is not a habeas claim. And then how difficult the alternative would be to implement by a state taking measures within its control really just goes to the merits of the inquiry. And I think one of the things that's difficult in this case is the intuition that it's hard to see a lethal injection challenge succeeding on the merits. So maybe just to abstract away from that and to give you an example that is not at all realistic for what states actually do. But if a state were to adopt either as a statutory matter or put in its constitution that the method of execution is, say, burning at the stake, and a prisoner who says, I agree that the death sentence is valid, my judgment is valid, but burning at the stake super adds pain relative to lethal injection. The fact that the state would then have to take a step, and if it wanted to carry out the execution in a constitutional manner, amend its law, then that does not change the nature of the claim and does not make it a habeas. Do you think it would be hard for a prisoner to challenge that in habeas? So I'm not making a courthouse gate being closed type of argument. I'm just saying that as a conceptual matter because habeas is about the validity of the judgment, I think it's clear that that is not an attack on the validity of the judgment but just the manner of carrying out judgment. Doesn't that depend on state law, whether it's an attack on the validity of the judgment or not? Yes, it does, Justice Alito. So we do think that a state has the power to define its judgment, and a state could choose to define the judgment to include the manner of execution. We agree with Petitioner that no state has done this. I think the ACLU brief is helpful in laying this out. That would have all kinds of important implications for retroactivity, for resetting collateral time, and I think that the state constitution example, probably as a practical matter, is a little bit unrealistic for the same reason states have repeatedly made executions more humane and they don't want to make it difficult to change methods of execution. Well, if it's a question of state law, then what do we say about Georgia law? Well, we predict that Georgia will do what all these other states have done. That's what we're supposed to do. Justice Alito, no prediction is needed. The Georgia Supreme Court has said in Dawson that the judgment is not void when the manner of execution changes. In fact, the manner of execution changed from electrocution to lethal injection with that decision. And not only does Petitioner's judgment in this case not specify a method of execution, even in Georgia cases where judgments did specify the method of execution, Georgia courts have held that the sentence could proceed without resentencing. And I think that's really critical to illustrating that what is at issue is not the validity of the state's judgment, and I do think that's the one place where state law is relevant because habeas is about what the judgment is and the state does have the power to define that. I'm sure it's just me, but I guess I'm a little confused. Could a state make the method of execution part of its judgment in such a way that any attack on it would be required to go to habeas? Yes, Justice Gorsuch. How would that happen on your view? So a state could say, we defined the punishment for the offense to be execution by lethal injection. So if there were state law saying that, that would be sufficient? That's right, Justice Gorsuch. Or if the state court held that maybe just looking at the particular statute, that it viewed the method as inseparable and so resentencing is required every time a method of execution is changed. So as a matter of federal law under the Malloy decision, that is not required, but a state could say, we see Malloy, but we disagree. Now, the states have actually gone in the opposite direction. I understand that. I understand that point. So I guess it really does boil down to what Georgia law says here, then. I think that if Georgia law here defined the method of execution as part of the judgment, and it's crystal clear I would submit that it doesn't, then I do think the outcome would be different. Okay. And what do we do about the fact that in the verdict form, the jury indicated it would be death by lethal injection? So Justice Gorsuch, it's unclear what that meant on the verdict form. It was part of the language on the verdict form, but it's not clear what that meant because lethal injection was the only statutorily authorized method, and the judgment didn't repeat those words. But I think the reason that that feels significant is that it seems like it may suggest that Georgia is a state that actually defines a sentence to be death by lethal injection. And, in fact, we know from the Supreme Court decision, from the practice when method of executions have changed in the past, and from the language of petitioner's actual judgment that that is not the case. What do we do about the common law history, as well, that, you know, the death sentence manner of execution was often typically part of the death sentence? Justice Gorsuch, a similar decision had come out the other way based on that common law. On exposed facts. Under exposed facts. I think that would have been an argument for that, but I think it's clear that as a matter of federal law, it is not part of the sentence. I wasn't asking as a matter of federal law. I was asking about common law. But maybe you don't have any thoughts on that, and that's fine. I don't. I think that the Malay decision has cross-averaged. Thank you. I just want to caution one answer, about one answer you gave to Justice Alito, because I don't think it's that big of a box. This doesn't defeat your argument. You said, I think, that the difficulty of changing state law could come in on the merits of the 1983 claim. If you took that to its logical conclusion, if the state constitution said burning at the stake is the only method, that would mean you couldn't maintain a Bucklew claim against that, and I don't think that's right, as I said in the Bucklew oral argument and opinion. I don't think that could be right. So, Justice Kavanaugh, we don't have a position on the particulars of how the merits inclusion should play out. We think this court hasn't developed that further. We recognize there are difficult questions on both sides, and we take Bucklew to say that kind of the standard basic difficulty of changing the law isn't enough, but we do think that the option is open to potentially take into account that there are some extreme difficulties. Now, I will say it's extremely unlikely that this would come up, because the Bucklew standard is so rigorous on the merits. So in addition to the protections from 1983, including the PLRA, which Justice Gorsuch does require exhaustion for 1983 prisoners, there is that very demanding standard, and the alternative has to be feasible and readily implemented. It has to significantly reduce the substantial risk of severe pain, which is where a lot of these cases can drop out more easily, and the state has to not have a legitimate and logical reason. If something is so important to the state that it's in the Constitution, perhaps there would be a legitimate and logical reason. It's hard to imagine the state codifying just one method of execution for no particular reason. But, you know, if the state does something extreme like in the burning of the stake example, it does seem like that the answer should probably be that that case gets pulled forward on the merits. Yeah, back to current statutes and the way current state statutes are phrased, I think what you were just saying is most of these claims go out on the first prong. Am I right about that, or am I wrong about that? The first prong being you haven't shown severe pain at shorthand. I think that is where a lot of the activity is, and that's one of the reasons the dual track system would be so unwieldy, because that is the same question, regardless of the alternatives, and then splitting the claim up to litigate whether the firing squad is readily implemented versus a different protocol really does not make a lot of sense and creates a possibility for competing states being entered, which is also not helpful to the litigation. And just to say one more thing on the protections that are available, even under Section 1983, I just want to emphasize the very important protection of the limits that this court set out in Hill on the state. And, in fact, I think the aftermath of the Hill case is itself a good example. In that case, of course, the court ruled unanimously that a Section 1983 action instead of a habeas action could proceed, and Florida executed that prisoner less than four months later because the district court said that it was filed too close to the execution date, and so for that reason alone, the 1983 suit could be tossed, and the 11th Circuit agreed that a state was not warranted. So there are a lot of protections for the states. We don't want to in any way suggest that the state's sovereignty considerations are not significant here, but we just submit that that's not the test for whether AEDPA applies or not. The application of AEDPA turns on whether the validity of the judgment is being attacked, and in this case it is not. If there are no further questions. Counsel, on the common law issue, your adversary cites only one support for that, and that's Blackstone, and the Blackstone Treatise states that a sheriff who substituted a different method of execution than one handed down by a judge could be guilty of a felony. That's a different situation than this one. There it suggests that the judgment included a method of execution that a sheriff decided to change, correct? That's right, and I think the common law is further complicated by the fact that this would often go to the jurisdiction of the court to impose a sentence in the first place, but again, I think that if Malloy had come out the other way and had held that the method is an inherent part of the judgment for purposes of federal law, then I think we would have a different situation here. Thank you, Counsel. Justice Breyer, anything further? Thank you, Counsel. Mr. Petrani? Mr. Chief Justice, and may it please the Court, this case is not about whether Petitioner Nance can challenge lethal injection under the Eighth Amendment. He can do that in state court. He can do it in a properly exhausted federal habeas petition. It's also not about the substance of an Eighth Amendment claim, which remains the same in any forum. Instead, it's only about how and where he should file this claim, and here he seeks to prevent his custodian from executing him. That is habeas relief, and so it's not cognizable in Section 1983. Execution is a distinct form of custody. That's why prisoners can challenge capital punishment in habeas to begin with, and here Nance seeks to bar his custodian from exercising that custody over him. That's habeas relief. It doesn't matter whether someone someday might be able to execute Nance if Georgia were to authorize a different criminal punishment. The relevant point is that he seeks to bar death by lethal injection, the only state-authorized punishment he's actually subject to. Indeed, Congress passed AEDPA for situations just like this one to prevent unnecessary intrusions on state sovereignty. Nance virtually ignores AEDPA and would have states amend their statutes and even constitutions merely to effectuate their criminal judgments, all without AEDPA's protections, including prior state court review, which can resolve many of these cases. That is not what Congress wanted. Simply put, Nance could have filed in state court, he could have filed a 1983 complaint that did not seek to bar lethal injection entirely, or he could have chosen not to abandon his similar claims on post-conviction. But what he can't do is get around AEDPA by challenging his execution via Section 1983. I welcome the Court's questions. Counsel, is the method of execution a part of the capital sentence in this case? So I think one of the virtues of our approach, Justice Thomas, is the Court would not need to answer that question, and I strongly disagree with my friend from the other side who says it's clearly not. I think it's unclear under Georgia law whether it is or not. What Georgia courts have said is that when the legislature changes from, say, electrocution to lethal injection, that doesn't require resentencing. That doesn't mean the sentence didn't change in some sense. I mean, the sentence is what the state says it is. And if they change what they say it is, that might be subject to federal constraints in terms of ex post facto and so forth, but there is nothing that says that a state must resentence a prisoner in order to change their sentence. Just to give one example, when Virginia repealed the death penalty recently, by statute they changed all of those sentences. They didn't require resentencing or anything like that. And so I think if you go down the road of allowing these challenges to custody in 1983, the court is effectively saying we are telling states this is not part of their sentence. Well, Mr. Petrani, doesn't Georgia law itself separate the sentence of death from the method of execution? So I'm just going to read you your statutes, and you can tell me whether I've gotten them wrong, but it says a person convicted of the offense of murder shall be punished by death, by imprisonment for life without parole, or by imprisonment for life. That's one. And then there's another provision, just by death. Another provision that says all persons who have had imposed upon them a sentence of death shall suffer such punishment by lethal injection. So your own statutes are clearly saying it shall be punished by death, there's the sentence, and if you're given that sentence of death, here's the way we propose carrying it out. So a few points on that, Justice Kagan. First is I don't think that federal courts should generally be in the business of telling states, well, if you don't write your statutes a certain way, we're not going to consider them to be part of the sentence or something like that. I mean, I think that's for states to say. Well, here you have a statute. It says what it says. Then you also have a Supreme Court decision that makes clear that the ordinary way of reading these words is in fact the way Georgia reads these words, and that's why nobody needed a resentencing when you changed your method of execution. So I guess I just don't see what argument you have here. Well, so a couple points, Your Honor. First, I would say if you go down later in the lethal injection statute, it defines participation in a death sentence as only lethal injection-oriented things. So I think it's very clear that the state understands a death sentence as lethal injection. But even if it didn't, and I think this is the virtue of our approach, habeas isn't about challenging sentences per se. Habeas is about challenging custody. If you were to challenge, for instance, a criminal fine, you couldn't do that in habeas because it's not custody. And Pricer, which is where the court began with this doctrine, the sentence was still extant at the end. The sentence still existed. The reason that this went into habeas was because the custody was going to be cut short in that case. And so while my friends on the other side focus again and again and again on sentences, they're really talking about a different question. The question is whether custody is being stopped here, not whether the sentence is being vacated. And in fact- See, I guess I thought that our test is always, does this necessarily imply the invalidity of the sentence? And if the sentence is just death, this does not necessarily imply the invalidity of the sentence. Quite to the contrary, Mr. Nance is saying he conceives the validity of the sentence of death. Well, so a couple of points, Your Honor. First, I respectfully just have to disagree. Pricer makes clear, Balasag makes clear, it really isn't a question of is the sentence extant at the end. You might be let out of jail a few days earlier, and it's not that there's some problem with your sentence. You just got let out of jail, and so that's habeas relief. And so similarly here, even if the sentence per se still exists in some form, if you no longer can be executed, then that's a bar against custody. But also, Heck made clear, and I think the follow-on cases as well, it used the term validity. It didn't use the term vacate. And I think that there was an important point to that. In all of these cases, the question is, can I enforce this sentence against you? It's not a matter of, well, is it literally being vacated? In none of these cases, actually, neither Pricer, Heck, Balasag, et cetera, was someone asking for a vacateur of the sentence. They were just asking for something that would mean the sentence could no longer be validly enforced against them. And that's what he's asking for here. I would also hasten to add, although my friend from the other side now suggests that maybe some sort of lethal injection could be viable. That is not what they said, what Nance said in his complaint. It's not what he said in his opening brief. 103 of the petitioner's appendix, the release that he requested, was to enjoin the use of any lethal injection at all. So if Nance were to succeed, his custodian could not exercise this custody over him. That is mainline habeas relief. And I think that this focus on the sentence is really an attempt to get away from that particular point. And I also think that it creates a lot of practical problems in terms of looking at state law. In nearly every case, the court has to look at state law to figure out, well, what's going to be the effect here? Will he be released if we rule this way? Will he not be released? Will he maybe be released? In the capital context, the question should be, well, can he be executed if we rule this way? Or can the warden no longer execute him? That's the question. The question is not, will there need to be a resentencing? And if that's the question, then you get into very complicated questions of separation of powers and what a federal court can say about what a state court's sentences are, and so on and so forth. I'm sorry. Keep going. I was just going to say, on the other hand, I think that any practical concerns with our approach are vastly overblown. And I can get into those. But, of course, Justice Kavanaugh, if you have a question. You didn't raise this argument in the lower courts and I think indicated that you've grown accustomed to 1983. Is that correct? That doesn't preclude your argument here. I'm just, is that accurate? Yes. So most of these cases up until now had been genuine method of execution claims, things like don't use this drug, use this drug. And so, yes, we were, I think, accustomed to that. And there are lots of reasons to dismiss Mr. Nance's claim. And so we relied. And it was dismissed here under 1983 because it was too late, right? I'm sorry, I didn't. Because it was too late. Oh, yeah, yeah. I mean, the primary argument we had was that this has been ripe and known for years and Nance waited until essentially all of his other litigation options ran out. And the district court was able to deal with that under 1983. It did, although, as my friend on the other side points out, at least one appellate court judge disagreed with that conclusion. So I guess that leads to my bigger picture question, which I've indicated to the other side as well. We've largely shaped the interaction of 1983 and habeas. I'm interpreting a statute here, figuring out where our precedents lead and what makes the most sense in terms of the interaction of the two things, the two roots here. And so we have some discretion, I think, in the gray area. And it seems like we've been on a 15-year effort to organize how these method of execution claims should proceed, culminating in Bucklew, which gave pretty clear directions about that and also repeated the Hill v. McDonough thing about undue delay and too late. So I guess my question is why would we upset all that and create new complications, for example, on the second or successive question as illustrated by Justice Alito's questions earlier? We're going to get into a whole set of complications under that. Why? Well, so a couple of points, Your Honor. First, I don't think this is entirely just kind of a judgment for the court to make. I think it is looking at statutes. There's 1983. There's AEDPA. And in Pricer, the court held, look, the specific controls over the general. So if Congress has indicated a certain thing should happen when there are challenges to custody, that should go under AEDPA. And I think that to the extent that this is a challenge to custody, and that's our argument, let me supplement and say I think both sides have good arguments, at least plausible arguments, about how to characterize the sentence. Well, so, Your Honor, I think that one place to look is AEDPA itself was designed to prevent this sort of piecemeal attack on execution. I mean, the Antiterrorism and Effective Death Penalty Act was designed to get everything into a single federal habeas petition that a petitioner wanted to bring, and it recognized that, you know, stuff might come up later, but we think states can handle that, and that's the regime that we want. And so I think that that's one indication of where the court should go. Also, to just get into some of the supposed practical problems here, I haven't really heard any particularly difficult practical problems. My friend from the United States suggests, well, maybe someone would amend their complaint. That happens a lot, and, yeah, if you amend your complaint and now you have a different claim or a different theory or something, that can change where things go. I mean, to just use Balasag as an example. What about new facts? You know, you've gotten older and you have a new medical condition that will make the lethal injection feel like torture. Well, then you raise that claim, of course, and we think they absolutely can. And just to clarify another point about Georgia law here, because this came up on my friend on the other side's time, the Owen v. Hill case is very clear that what it is talking about is genuine method of execution claims that go to drug choice, you know, the sort of things that any warden can handle not barring lethal injection entirely. But even if that weren't the case, even if Georgia were to someday decide, well, you know, in our own system, we want to put these into a different box, Owen v. Hill makes clear that you can raise those challenges in a declaratory judgment action in Georgia state court. So there is no question that you can raise that claim. I mean, in a lot of circumstances, of course, it's going to fail because of timeliness or the merits or something like that, but it's definitely cognizable in Georgia state court. And so what this ultimately boils down to is, you know, to paraphrase Justice Scalia, Nance just wants another federal district court to rule on one of his claims. But doesn't what this ultimately boils down to whether Bucklew is completely gutted? I mean, you're suggesting an approach where it's like it's not 1983, it's habeas. Oh, sorry, in habeas, you run into the second and successive bar. You're just never going to be able to bring these claims, or maybe I should say almost never. And it seems as though that's exactly what Bucklew said should not happen. Bucklew on nine justices agreed on one point, which is that somebody in Mr. Nance's position was entitled to raise an alternative method of execution that had not been authorized by state law. And the court said, we see little likelihood that an inmate facing a serious risk of pain will be unable to identify an available alternative for that reason, because he was entitled to identify an alternative that was not authorized. There was a concurrence that really underscored that point. And now you're saying, oh, well, you know, really, Bucklew didn't mean what it said, notwithstanding that it said a petitioner is always going to be able to do this. What we meant was a petitioner is technically always going to be able to do this. But in 90 percent, 99 percent of the time, he's not going to have an appropriate vehicle. Now, is that really a reading of Bucklew that would not be, I don't know, embarrassing? No, Your Honor, I don't think that's at all what we're saying. Nance can absolutely file this sort of a claim in state court any time he wants. And, of course, he can file it on his initial postconviction time, which he did. He filed very similar lethal injection claims. He also included a claim in his federal habeas petition that his counsel was ineffective for failing to raise these sorts of claims. So Nance himself is kind of the advertisement for the fact that these are available all the way along the line. But what I take Bucklew to say is the claim itself shouldn't be hard in terms of finding an alternative. But it's specifically left open that where you do that, whether you do it in state court or federal court, it might be a question because if you are going to stop the warden from executing you, period, that's habeas relief. It doesn't mean you can't make that claim. Of course you can. Georgia courts are wide open to that sort of claim. And I think what EDPA tells us is, and this court has said it numerous times, and Congress has certainly affirmed it, that not every single claim gets a federal forum in district court. No matter what, of course, this court would have certiorari review if there was some extreme breakdown in state court. And in most cases, I think that petitioners are going to be able to raise these across the board, no lethal injection whatsoever kind of claims in their first federal habeas petition. But I don't see this as cutting back on Bucklew at all, any more than Heck or any of these other cases cut back on substantive rights. But, you know, so on page 50 of your brief, which I asked your friend on the other side about, you say that there would be a forum in Georgia courts. But would there not be these kinds of ripeness problems or second or successive bars? Or I assume that Georgia post-conviction practice has bars that would be analogous to the ones that apply under EDPA. Is it really the case that the state courts would be wide open? You're saying wide open has a forum. Is that really true in these kinds of claims? I think it is, Your Honor. Of course, if someone has had a ripe claim for eight years or something along those lines and then tries to file it and gets booted out of court, that's not unique to this area of the law. It's not unique to Georgia courts. Federal courts would do the same thing. So there might be timeliness concerns or merits concerns. But Georgia law is very clear. There is no time limit for a capital sentence habeas petition. You can file a second or successive one if you have a reason for doing so. And the fact that you couldn't file this claim before would be a good reason. Again, we don't think that's actually the case here, but it is available. And so I don't really see – there are the ordinary barriers that any capital petitioner is – for that matter, any habeas petitioner is going to have to deal with in terms of time limits and ripeness and so forth. But nothing about that is distinct in this case as opposed to any other kind of capital or, you know, likewise just imprisonment claim. You say in the footnote on this page that if in a hypothetical situation you say that would be unlikely to occur, there were no state form in which this kind of Bucklew claim could be pressed, that the petitioner could raise a due process challenge saying, you know, I just had no form for my claim. What would be the procedural vehicle for asserting that, 1983? Yeah. So I think it's so unlikely to occur. There isn't really much case law that I could provide for the court in terms of here's how it would happen. But I think you could file essentially either a federal habeas petition or a 1983 claim and just say, I have no opportunity whatsoever. I never had a chance to do this, and I believe that that violates due process for this, this, and this reason, and therefore I'm entitled to do this in this forum. I don't think that, you know, the distinction at that point between 1983 and habeas is going to be as important because we're in, again, an unrealistic hypothetical world where you've had no opportunity over the course of, you know, your entire time in prison to bring this sort of a claim. But I think, again, this is getting very far away from what is in this case a mainline case. This is a petitioner who says, you cannot execute me by the only way you're authorized to execute me. At the end of the case, the warden would not be able to exercise this custody over the petitioner if he succeeded. That makes it habeas. That makes it ethical. So how is this different from any of the cases where states have said, a particular form of medical treatment is too expensive. We don't have the budget for it. In my estimation, budgets are generally passed by law. The laws have to be changed, and the court says it's unconstitutional not to do. The state does what it needs to do. Similarly, just in Americans for Prosperity Foundation last year, in a 1983 action, we said a California regulation was not a permissible remedy in joining a California regulation. All of these things require changes either in state statutory law or regulatory law, and we've never suggested that curing a violation on its face because a law prohibits something stops in 1983. But I just experienced in the news Florida changing its law with respect to one of its state citizens in a matter of weeks, if not days. Is there something that stops Georgia from acting expeditiously if the court were to rule in its favor? You have lots of reasons why the court shouldn't in the 1983 action, but let's do the worst. Well, so I think as to your first point, Justice Sotomayor, I want to be clear. We're not saying that 1983 actions don't reach state law. They do. They just don't reach challenges to custody. So you could have to rewrite your entire Constitution in California or wherever. We get back to our main argument, which is what's the judgment? Is it custody or is it death, and is the method of execution separate from that? Assuming that argument, you win on that argument, which I still have a hard time understanding how you do, because in Dawson, the Georgia Supreme Court saw the two as different in the statute. Well, but to be clear, Your Honor, under our theory, we don't think the court needs to determine that. We do think that the sentence is invalid. Well, could you just answer my bottom line question? Yeah, if you could remind me, Justice Sotomayor, what the question is. A budget change, a law change, a regulation, is there anything that precludes the state from doing that if it were to become necessary? Well, they can do that. And they could do it in a reasonable amount of time if they chose? Well, I suppose it depends, depending on the hypothetical situation. But, yeah, I mean, at some point a state can change its laws, of course,  suggesting that unlike our U.S. Constitution, that you need two-thirds of the state to change the law, two-thirds of the districts. Well, Your Honor, I can't speak to every state constitution. I'm sure some of them are very difficult to amend. But my underlying point is Well, this is not a constitutional issue, but I'm asking No, here it's not, no. It's a statutory issue. Yeah, I mean, Georgia theoretically could do it, but the warden can't, and the order is going to the warden. I mean, this is an injunction against a particular person who wants to exercise a particular form of custody over Nance. And that's habeas relief. That's classic habeas relief. And that's the bottom of our argument. Thank you, sir. I just want to very briefly touch on the second or successive issue. The text of 2244 is exceedingly clear. My friend on the other side has barely even mentioned the text, and I think for good reason. It does not do him any favors. If the court were to adopt a rule that said, well, if you couldn't have done this before, or if this wasn't right at the time of your first habeas petition, we're not going to apply the second or successive bar. We would, in fact, as Justice Alito indicated, just be back in abusive days. This court has explicitly acknowledged that's not what Congress wanted. It very specifically picked the first half of a two-part test and said, if it's second or successive, it's barred with these very narrow exceptions, which themselves would be all but meaningless if one adopted Nance's rule in this case. And, again, none of this goes to whether or not Mr. Nance can file this claim somewhere. He is going to be able to file the claim. It's just a question of is it in state court or is it in a federal district court. If the court has no further questions. We have one question. I mean, what's the prisoner of these take years, these cases? What's the prisoner supposed to do if the method seems all right when he's sentenced, and then they change it over 10 years and now it doesn't seem all right? And he's filed 14 habeas petitions on other matters. Well, can he file this one or not? Well, in federal court, if he's already filed a prior application. I'm just saying to you, in your opinion, if we decide for you and you win, can the individual file the claim that this method they're going to execute me is unconstitutional? Can he do it or not? In state court? Absolutely. We think he'll lose. In habeas? Oh, in habeas? No, Your Honor, because he already. Okay, so you're saying he should file in habeas. And by the way, he can't. Well, Your Honor, he did, in fact, file claims that were very similar. No, but take my case. Ten years passes. There was an old way that he didn't object to. Now they changed the law. The new way he does object to. Yes, Your Honor. There are some claims that are not going to be able to be brought in a habeas petition. And this Court has recognized this on numerous occasions. That's what I'm saying. Yes. It's a new claim. I mean, it's not a new, sorry. It's a new method of execution. He thinks it's torture, and it wasn't there before. Well, he filed 15 other habeas petitions. Now he comes to you, says, I have my new habeas petition. Now the method they're actually going to use is torture. And can he do it or not? Not in a federal habeas petition. He could do it under state law where he would have to establish, you know, the merits of his claims. But that is, again, that's not unlike plenty of other claims that drop out because of the way Congress wrote AEDPA. So to just take one example, in Burton v. Stewart, the Court held that various claims that the petitioner had were just gone for good because he had already filed and litigated a first habeas petition. And at the time, those other claims were not available. He couldn't file them at that time because they were not exhausted yet. So Congress was aware, and this Court has said on numerous occasions, that, yeah, every once in a while there's going to be a type of a claim or something that comes up that doesn't get federal district court initial review. And we trust people to do that. You mentioned earlier that you're saying he should go into state court, and you mentioned earlier that he would be likely to lose there. On the merits, Your Honor. Or because his, you know, everything was untimely, which would be the same in Section 1983. It would be either way. And wherever he goes, we think his claims would be untimely. But he's at least got a cognizable cause of action in state court. It's just we think he would lose for other reasons. Okay. Well, you say go there and he's going to lose, and yet you're saying that he can't file in federal court because he filed a prior habeas petition, but the claim was not there when that prior habeas petition was filed. Justice Breyer's hypothetical about, you know, a change in his medical condition, that it is now a different situation to have a lethal injection than now. That does seem like a pretty daunting catch-22. So, Your Honor, two points. First, just to be clear, that isn't actually the case here. It was ripe at the time of the first federal habeas petition. But, yes, there are theoretical possibilities of this happening. But Congress was well aware of that. And, in fact, the very terms in Section 2244 make that clear. The fact that Congress exempted such narrow categories from the second or successive bar shows. You're assuming that when Congress passed it, they understood that it would have this kind of coverage. Well, I think that Congress absolutely knew it would have this kind of coverage. In fact, this was the point of it. The reason that Congress enacted 2244 in its current form was to narrow and, or to use this Court's terms, make more stringent the bar on successive petitions. Previously, at a- I know, but this is, I mean, from, you know, the Ford case, for example, the question of how you want to interpret successive petitions. I mean, I'm sure that you've consulted your interests carefully, but you're going to be confronting difficult challenges if you prevail here. Well, I think that the point of AEDPA was that state courts getting these difficult challenges is what was supposed to happen. And AEDPA was, again, which this Court has confirmed, was Congress's decision that state courts is where almost all of this should happen and only in extreme circumstances should a federal court be getting involved. And so it's not at all surprising that state courts would be the ones to deal with these constitutional issues. In fact, that is the entire point of AEDPA, was to force them into state courts so that states could, in fact, effectuate their own judgments and in many cases just avoid an unnecessary clash of sovereigns. And that happens all the time. States stay their own executions all the time. They rule for prisoners all the time. So states are more than capable of carrying out their federal constitutional duties, and that was what Congress thought when it passed AEDPA. So tell me again why you're pretty confident he's going to lose in state court. Well, I think that his claims are untimely. He claims essentially that his veins are problematic and that gabapentin might interfere with the lethal injection. The veins he has known about for decades. His filings repeatedly, again and again and again, said, I have bad veins due to long intravenous drug use and so forth. The gabapentin, he pleaded that he started in 2016, which was roughly four years before he filed his 1983 claim. And you think were the facts otherwise, this was, in fact, a new condition that developed in him, that he would prevail in state court? Well, he would at least get past the timeliness bars. Then he has to make the claim, you know, the Bucklew claim. Is this, in fact, a feasible alternative? Does the state not have a legitimate penological interest in what it's doing? Will lethal injection actually cause the kind of pain that he claims and so forth? He has to win on the merits, but, yes, it would be there for him to make that claim as long as he gets it in on time. Were our recent string of religious advisor cases properly brought in 1983 to the extent that it required a change in state law? So, Your Honor, as I understand those cases, they didn't require a change in state law. It was just a practice, and so they were, in fact, properly filed in 1983. Suppose they were in state regulations that had to be changed, though. Yes, so, of course, that case isn't actually presented here, and there are slightly different concerns. So if a state puts no religious advisors into the execution room, into the state law starting tomorrow, will those claims now have to be brought in habeas rather than 1983 and then barred? Yes, so I think that they would have to be filed in state court, and they would have very good chance of succeeding, and so I think states are very unlikely to handicap. But no federal form available for that claim? Well, of course, to the extent that, you know, state court goes completely rogue, there's still, you know, review by this court available at the end, which is what Congress— By federal district court, I should assume. Yes, yes, no, exactly. No federal district court review in that very unlikely, and as far as I'm aware, like essentially, you know, never happens kind of circumstance. But I think to— Well, it does point out the oddity, I think, that I don't know that anyone paused to say, boy, this religious advisor claim should be in habeas. Well, Your Honor, at least as I understand it, it didn't need to be in habeas because it was not, in fact, a legal requirement. It was just something the warden could or could not do. But one could easily imagine. I mean, you said very rare. One can easily imagine these sorts of requirements appearing in prison regulations, which have the status of law. Well, so it depends. If it's just a policy that the warden can change anytime he wants, then you're not really affecting his authority and his custody. Now, if it is a legal regulation that would, in fact, be something that the warden can't get around, that would change things potentially. But there are two points here. The first is states have no real incentive to make their own judgments harder to effectuate by making parts of them details they don't really care about. If they really care about the details, then maybe they put them into statutes. But if they don't, you're in a situation where they can't carry out a sentence or something like that because, you know, someone said, I want a religious minister in the room. And under state law, they can't have him in there. That means now they can't execute this person. And also, to the extent that they're going to do that. It's a little bit of irony you're making Mr. Hellman's point for him, that that's why states, you and others, don't make lethal injection part of the sentence. Well, no, they do make it part of their law, Your Honor. And I think that to the extent there's any concern about, well, what could states do or so forth, as I understand it, my friend on the other side does not contest that if a state said, well, you'd have to be resentenced. You know, a court would just have to check a box that says, all right, now we're sentencing you to death by this new method or something like that, that that would, in fact, require these to go to habeas. This focus on the sentence, I think, is improper. But states could do everything that he claims they can do under our rule under his rule as well. So I don't see this as any significant departure from what a state could do right now. And, again, they have no incentive to do that. There's a reason that they don't put details they don't care about into their statutes and regulations. There's a reason that Mr. Nance has not been able to come up with any particularly problematic state statute or anything like that, because if then there is a problem with that drug. If you say in your statute, well, it can only be pentobarbital, well, if they can't get any pentobarbital or if there's something wrong with pentobarbital, then all the executions stop, all the criminal judgments can't be effectuated. Can I ask a clarifying question about the religious advisor, Ron? I'm probably just not tracking the position, but I guess if a religious advisor claim was brought and we said that it was unconstitutional for the state to have a law or regulation prohibiting a religious advisor from being in the room, why wouldn't the execution go forward then with the religious advisor, because the state law would essentially be unenforceable in that situation? Why would it stop the execution? Well, they're not, to be clear, Your Honor, they wouldn't be conflicting. If the federal court ordered the warden to perform the execution, then, yeah, the state law would kind of have to give way. But what the federal court would be doing was just entering an injunction saying, don't execute this person without a religious advisor in the room, and because state law doesn't let him do that, he's just in a situation where he can't execute that person. And to some extent that explains the big difference between death penalty-like claims and just your ordinary 1983 challenge to a condition of prison confinement or something, where just because you enjoined some prison regulation or even statute doesn't mean you're releasing the prisoners.  Whereas here, if you stop them from doing it the only way the state has authorized, well, then the execution just stops, and that's habeas relief. Thank you, counsel. Justice Thomas, anything further? Justice Breyer? Justice Sotomayor? Justice Kagan? Justice Gorsuch? Sorry, two quick ones. Just to follow up on Justice Barrett's, if the court ruled that you had to have the religious advisor present in the room and state law did not allow that, wouldn't this, I guess maybe I'm missing this, but state law would have to change, or I guess the state law just would be deemed unenforceable. That might be her question. Yeah, the state law would have to change in order to carry out the execution. The state doesn't have to change its law. The warden could just not carry out the execution. And that would be a habeas situation. Yes. No, yes, we do think that would be a habeas situation, very unlikely to arise, but yes. And you would have to go to state court first, then a federal habeas petition. And second question, don't take it the wrong way, but if you were to lose in this case, is it better for the state of Georgia to lose on the 1983 point or to lose on the second or successive? Well, it's not necessarily the last question you want to get while in front of the court, Your Honor. I'm not saying you're going to. I just want to know. It's hard for me to say that I have a preference, given that I think we're correct on both issues. I think that it would very much depend on what the court said about the first question and what the court said about the second question. If the court was able to come up with some way on the first question that was, you know, did not damage habeas law, the understanding of habeas as a challenge to custody and all those things, again, I don't think the court can do that, but then maybe that wouldn't be such a problem. Similarly with second or successive, if it was another Panetti-like one-off carve-out, that's very different from a rule that says, well, actually, just any claim that wasn't available previously. So it's very hard for me to say, but that's the sort of analysis I would be thinking of. Very helpful. Thank you. Thank you, counsel. Rebuttal, Mr. Hillman? Thank you, Mr. Chief Justice. Just a few quick points. First of all, as to what Georgia law contains, I do refer to the court to Dawson v. State, which is crystal clear from the Georgia Supreme Court that the method of execution is not part of the sentence of death. And I think my friend on the other side more or less concedes that because he says it does not matter to his argument, because his argument is about custody. Let's talk about custody for a moment. Point number one, characterizing this claim as seeking release from custody is odd, to say the least, to begin with, because, of course, the death sentence remains in place and the state may use any legal method of execution to carry it out. That leaves my friend to say, but the warden might not be able to adopt particular procedures. Method of execution claims of all stripes involve alternatives where there will be a question about what the warden can or cannot do on his own or her own. For example, whether or not the warden could obtain a particular drug, or whether or not the warden would need approval from some other regulatory entity, perhaps a federal entity or a state entity, in order to carry out the execution. Making the habeas 1983 question turn on the answer to that inquiry, which will often require factual findings and complicated assessments, is a recipe, as I said at the beginning, for delay, confusion, and arbitrariness in these cases. So we recommend the court not go down that road, which takes us to Section 1983, which has been here for 150 years and provides the tools to courts to deal with dilatory claims, stopped claims, and any other claim that does not warrant relief. All we are asking for is the court to apply its 1983 precedent and allow this claim to be heard on the merits so that those questions may be determined. We ask the court to reverse. Thank you. Thank you, counsel. The case is submitted.